Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.5169
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

### IN THE DISTRICT COURT OF THE STATE OF ARIZONA

| | |
|---|---|
| David Hezekiah Adams, an individual; Rebekah Adams, an individual; and, Noah Adams, an individual, | Case No: |
| | **PLAINTIFFS' COMPLAINT** |
| Plaintiffs, | |
| vs. | (JURY TRIAL DEMANDED) |
| City of Lake Havasu, a governmental entity; Chad T. Graybeal and Jane Doe Graybeal, a married couple; Julio Flores and Jane Doe Flores, a married couple; Joshua R. Condra and Jane Doe Condra, a married couple; Clint Wilcox and Jane Doe Wilcox, a married couple; Danielle Banuelos and John Doe Banuelos, a married couple; Corporal Dana Peterson and Jane Doe Peterson, a married couple; Cameron Hollis and Jane Doe Hollis, a married couple; Aaron Phoenix and Jane Doe Phoenix, a married couple; Preston Pearce and Jane Doe Pearce, a married couple, and; John and Jane Does I-X, | |
| Defendants. | |

Plaintiffs DAVID HEZEKIAH ADAMS ("David"), REBEKAH ADAMS ("Rebekah"), and NOAH ADAMS ("Noah") (collectively "Plaintiffs"), by and through undersigned counsel, for their Complaint against Defendants CITY OF LAKE HAVASU,

CHAD T. GRAYBEAL and JANE DOE GRAYBEAL, JULIO FLORES and JANE DOE FLORES, JOSHUA R. CONDRA and JANE DOE CONDRA, CLINT WILCOX and JANE DOE WILCOX, DANIELLE BANUELOS and JOHN DOE BANUELOS, DANA PETERSON and JANE DOE PETERSON, CAMERON HOLLIS and JANE DOE HOLLIS, AARON PHOENIX and JANE DOE PHOENIX, PRESTON PEARCE and JANE DOE PEARCE, and JOHN and JANE DOES I-X   (collectively "Defendants") alleges and state as follows:

### INTRODUCTION

On June 7, 2023, David Adams, a developmentally disabled individual and member of a family Lake Havasu police labelled "special needs" and "fucking retarded" was violently and without provocation assaulted by Lake Havasu police officers while peacefully resting in his home.  Some of these same officers had previously been called to an assault on David. When the Defendants in this matter arrived at David's apartment complex, they convened prior to their assault on David. The Defendants said that the Adams' brothers were "three fucking dickheads hostile like a motherfucker." They said that "they're all like special needs yes; Like fucking way special needs." Defendants said that "these are those three brothers that are fucking retarded; they are all like special needs."

The officers sought to arrest David for "domestic violence" following a tug of war struggle (in which no blows were thrown) between David and his brother over a blanket they each wanted to use. Even though David had just woken up, was unarmed and offered no resistance to arrest, the officers threw David onto the floor and piled on him (as Condra related "we bum rushed his ass"), restricting his movement and causing severe pain to the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

2

point where David passed out several times prompting one officer to refer to him as a "dead body." The officers also tased David multiple times, inflicting at least 30 taser wounds and causing severe pain and permanent injury and scarring. Ignoring David's screams, the officers repeatedly taunted and hurled profanities at David during the assault.

When one of David's brothers, who one officer referred to as "dumb dick," protested the attack and attempted to record it with his cell phone, an officer threatened him with a taser (although he was obviously unarmed and non-threatening) and ejected him from his own house. There Preston Pearce demanded that he stand with his hands against a wall (although he had done nothing wrong) and screamed at him "If you fight us, I swear to God, I will fuck you up!" The supervising officer later suggested that David had "retard strength." David was charged with resisting arrest, for which he was acquitted by a jury on January 23, 2024. David seeks damages for the severe harm resulting from this horrific and unprovoked assault on David, and his family, by individuals sworn to "serve and protect" the Lake Havasu community.

Prior to the brutal beating of David, Rebekah was sleeping soundly when the Individual Defendants arrived. The Individual Defendants incessantly banged on the window to Rebekah's bedroom, yelling through the window for Rebekah to open the door to the apartment. Rebekah was scared. She was violently woken up in the middle of the night, and she had no idea who was banging on her windows, yelling, and shining lights into the same window. She did not want to open the door, because she was fearful for her safety and her family members' safety. The Individual Defendants would not let up. Finally, after close to thirty (30) minutes of cajoling, Rebekah relented and exited the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

apartment. The Individual Defendants would not let Rebekah re-enter the apartment. Rebekah was present when the Individual Defendants attacked, beat, and tased her brother.

Similarly, Noah was inside the apartment. When the Individual Defendants entered the apartment without permission, warrant, or exigent circumstances, Noah was forced to watch the Individual Defendants brutally attack his brother. Noah recorded video on his phone of a portion of the attack and pleaded with the Individual Defendants to stop hurting his brother. When the Individual Defendants realized Noah was recording, they forcefully grabbed him and pushed and shoved him out of the apartment – threatening that they would "fuck you up" and that they would tase him. Noah's foot was slammed in the door by the Individual Defendants.

## **JURISDICTION AND VENUE**

1.      Pursuant to 42 U.S.C. §1983 et seq., Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth and Fourteenth Amendments, and Arizona common and statutory laws.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.      To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, et seq. More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

4.      Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Mojave County, Arizona.

5.      Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Mojave County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

**PARTIES**

6.     David Hezekiah Adams ("David") is an adult resident of Defendant Lake Havasu City ("Lake Havasu"), Mojave County, Arizona.

7.     David is a developmentally disabled adult.

8.     David was 24 years old at the time of the assault alleged herein.

9.     At the time of the assault alleged herein, David lived in an apartment with his mother, Casandra Adams, a sister, Rebekah Adams, and two brothers, Zepheniah and Noah Adams.

10.     Rebekah Adams ("Rebekah") is an adult resident of Defendant Lake Havasu, Mojave County, Arizona. At all times relevant to this complaint, Rebekah was a minor.

11.     Noah Adams ("Noah") is an adult resident of Defendant Lake Havasu, Mojave County, Arizona.

12.     Defendant Lake Havasu is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Lake Havasu City Police Department, and each of the Defendants Chad T. Graybeal, Julio Flores, Joshua R. Condra, Clint Wilcox, Dannielle Banuelos, Dana Peterson, Cameron Hollis, Aaron Phoenix and Preston Pearce.

13.     Defendant Chad T. Graybeal ("Graybeal") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Graybeal is sued in his official and individual capacity.

14.     Defendant Julio Flores ("Flores") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Flores is sued in his official and individual capacity.

15.     Defendant Joshua R. Condra ("Condra") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Condra is sued in his official and individual capacity.

16.     Defendant Clint Wilcox ("Wilcox") was at all relevant times employed as a Lake Havasu City Police Sergeant and was acting as an agent of Lake Havasu and the Lake

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Havasu City Police Department. Wilcox is sued in his official and individual capacity.

17.     Defendant Danielle Banuelos ("Banuelos") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Banuelos is sued in her official and individual capacity.

18.     Defendant Dana Peterson ("Peterson") was at all relevant times employed as a Lake Havasu City Police Corporal and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Peterson is sued in his official and individual capacity.

19.     Defendant Cameron Hollis ("Hollis") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Hollis is sued in his official and individual capacity.

20.     Defendant Aaron Phoenix ("Phoenix") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Phoenix is sued in his official and individual capacity.

21.     Defendant Preston Pearce ("Pearce") was at all relevant times employed as a Lake Havasu City Police Officer and was acting as an agent of Lake Havasu and the Lake Havasu City Police Department. Phoenix is sued in his official and individual capacity.

22.     Defendant Lake Havasu is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Lake Havasu City Police Department and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by David as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with Lake Havasu or entities privately contracted with Lake Havasu.

23.     Defendants Graybeal, Flores, Condra, Wilcox, Banuelos, Peterson, Hollis, Phoenix, and Pearce (the "Individual Defendants") were at all relevant times acting for the benefit of their respective marital communities, if any, and therefore their respective

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

marital communities are liable for their actions as alleged herein. Accordingly, Jane Doe Graybeal, Jane Doe Flores, Jane Doe Condra, Jane Doe Wilcox, John Doe Banuelos, Jane Doe Peterson, Jane Doe Hollis, Jane Doe Phoenix, and Jane Doe Pearce are named as Defendants herein.

24.    JOHN and JANE DOE Defendants I-X represent individual defendants who may be liable for the acts or omissions as set forth in Plaintiff's Verified Complaint. Plaintiff will substitute the true names of these defendants upon discovery. As there are officers and others potentially present at the apartment complex, but unnamed in information currently available to Plaintiffs, Plaintiffs are including JOHN and JANE DOE Defendants I-X to preserve their right to amend.

## **FACTUAL ALLEGATIONS**

25.    In the evening of June 7, 2023, David was at home with Noah, Zepheniah and Rebekah. Casandra was not home at the time.

26.    At one point, David and Zepheniah got into an argument about a blanket that each wanted to use. They exchanged words and had a tug of war over the blanket.

27.    No punches were thrown during this sibling rivalry moment, although Zepheniah later admitted to police that he had pushed David in the face during the dispute.

28.    Rebekah, who witnessed David merely pushing Zepheniah's legs away from him, later told police that there had been a tug of war but that no punches were thrown and it ended.

29.    Rebekah saw that David was merely leaning over the futon he used as his bed trying to get a blanket from Zepheniah.

30.    David told Zepheniah to leave the apartment, and then locked Zepheniah out.

31.    Zepheniah called the Lake Havasu City Police Department via 911 and asked that they "evict" David from the apartment.

32.    The CAD Report shows – as well as the audio from the 911 call – that the Dispatcher believed that Zepheniah was intoxicated.

33.    The Individual Defendants responded to the call.

34.    Before the Individual Defendants approached the apartment, Graybeal stated

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

to Condra and the other officers present that members of the Adams family have "special needs." He said he knew this based on previous contact with the family.

35.     Wilcox was serving as shift supervisor of the Individual Defendants.

36.     When Wilcox arrived at the apartment, but before contacting anyone inside, Graybeal told Wilcox that the brothers of the Adams family were "fucking retarded." He also referred to the brothers as "three fucking dickheads."

37.     Graybeal reported that he remembered David from an incident several days earlier when David had been assaulted and severely beaten at "That Beach" in Lake Havasu.

38.     Graybeal had been involved in the investigation of that incident.

39.     Following the assault at "That Beach," David told Graybeal that he was unhappy that Graybeal did not arrest the individual who had assaulted and beaten him.

40.     The Individual Defendants then contacted Zepheniah, who was outside the apartment.

41.     Zepheniah explained to them that David woke him up to get a blanket that was under him. This led to a "brief physical altercation."

42.     Zepheniah admitted that at one point during the tug of war for the blanket, he pushed David in the face.

43.     At the same time, Graybeal had been banging on the window, yelling for Rebekah to open the door, and shining his light into the window belonging to Rebekah's bedroom.

44.     Rebekah was scared to death.

45.     She was woken up violently in the middle of the night and had no idea what was happening.

46.     After a long time of this, Rebekah finally relented.

47.     Rebekah, who Graybeal describes as a "pain in the dick," came out of the apartment and spoke to Graybeal, Wilcox and Condra.

48.     Rebekah told them that there was a brief incident between David and Zepheniah, but that no punches were thrown.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

49.     Wilcox, Graybeal and Condra nonetheless decided to arrest David for "DIS-CON"

50.     Wilcox, Graybeal and Condra entered the apartment through the front door although they did not receive permission or consent to do so.

51.     They did so after stating to each other that the door was unlocked.

52.     Wilcox said, "I say we go in there and have a chat with him".

53.     Wilcox and Graybeal decided they were "good to go inside".

54.     They did not have a warrant.

55.     There was no exigent circumstance.

56.     There was no probable cause to arrest David – especially since Zepheniah admitted that he was the one who pushed David in the face and David reacted.

57.     Everyone in the apartment was sleeping when the police arrived.

58.     Zepheniah was sitting calmly outside smoking a cigarette.

59.     In the Investigative Report prepared by a Sergeant Michael Terrinoni, he summarizes officer statements and specifically writes that Graybeal stated:

> The biggest discussion was the entry into the residence. It was discussed that they maybe shouldn't have made entry into the residence. Charles Yager (LHC City Prosecutor) has researched some supreme court cases that address that issue. The biggest thing that was discussed would be to ask Rebekah or Zepheniah permission into the residence.

60.     Zepheniah was initially interrogated by Graybeal and no intoxication tests were done – despite the 911 Dispatcher writing in her CAD notes that he sounded intoxicated.

61.     Later – after the Attack – Zepheniah was further interrogated by Peterson – no intoxication tests were done.

62.     When Wilcox, Graybeal, and Condra entered the apartment. They could not see David from the front door. Only after traveling down a hallway did they encounter David who was lying on a bed in the living room.

63.     What followed was an approximately eight (8) minute brutal attack on David (the "Attack")

9

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

64.     David stood up and told Wilcox, Graybeal and Condra that they needed to leave the apartment and that he did not want to talk to them.

65.     David had his phone in his hand to record the officers.

66.     David had no weapons.

67.     In fact, David was just in boxer shorts – wearing nothing else.

68.     It was plainly visible that David was not a threat to anyone.

69.     The officers did not even announce that David was under arrest.

70.     David told them he did not want to talk to them.

71.     The officers – who absolutely knew that David was developmentally disabled, and who showed clear maliciousness to David through their recorded conversations prior to making contact with anyone – pounced upon and seized David by his arms and threw him to the floor.

72.     They then piled on David, restricting his movements and causing him severe pain.

73.     David was stuck on the floor in a position that made it extremely difficult, if not impossible, for him to move his arms behind his back.

74.     David passed out several times during the Attack.

75.     Condra punched David repeatedly.

76.     One officer referred to David as a "dead body."

77.     At this point Pearce, Flores, Hollis and Banuelos arrived at the apartment.

78.     Pearce, Flores, and Hollis joined in the Attack.

79.     Banuelos did nothing to stop the Attack.

80.     David was not armed and did not fight with any of the officers. David did not attack, assault or in any way physically resist arrest.

81.     Condra obtained a taser and began to tase David repeatedly in "drive-stun" mode.

82.     Condra repeatedly tased David on his back, right thigh and stomach.

83.     According to the Taser Data Report from Condra's taser, David was initially tased for 3.271 seconds.

10

84.    Condra discharged his taser twenty (20) seconds later for 0.190 seconds.

85.    Less than a second later, Condra discharged his taser for 0.101 seconds.

86.    Six (6) seconds later, Condra tased David for 4.854 seconds.

87.    Approximately forty-nine (49) seconds later, Condra tased David for 5.214 seconds.

88.    Thirty-seven (37) seconds later, David was again tased for 2.855 seconds.

89.    Less than ninety (90) seconds later, a discharge of 0.528 seconds was recorded.

90.    Twenty-one (21) seconds later, Condra tased David for 5.222 seconds.

91.    In three minutes and forty-four seconds, Condra discharged his taser at least eight (8) times. David was tased for at least 21.42 seconds in that timeframe.

92.    While David was being tased, Graybeal kept yelling at him, "Remember me, remember me!"

93.    The assault on David lasted over six minutes.

94.    The tasing left approximately thirty (30) wounds on David's body.

95.    David repeatedly screamed in pain during the Attack and said he could not breathe.

96.    Noah, who had been asleep in the same room within feet of the Attack when the Attack began, woke up because the Defendants were kicking Noah, causing furniture to be pushed into Noah, and because the Defendants' actions were causing items in the room to fall off tables and hit Noah.

97.    Noah took out his cell phone and attempted to record the assault.

98.    Noah was seated in a chair.

99.    Noah never stood up.

100.    Even while watching his brother be violently assaulted, Noah remained calm and seated, recording the Attack.

101.    Noah was shocked by the assault force being brought to bear on his brother and pleaded with the offices to stop. "Dude, this is violent!" he said.

102.    Noah asked how many cops does it take and that what was happening was

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

11

violence.

103.   Condra threatened Noah.

104.   Peterson commanded Condra to pick Noah up and eject him.

105.   Although Noah was unarmed, non-threatening and had done nothing wrong, Condra and Peterson began pushing him out of his own home.

106.   Condra forcefully grabbed Noah and pushed him out the door.

107.   During that process, Condra and Peterson slammed the door on Noah's foot, causing pain to Noah.

108.   When Noah was pushed out of the apartment, Pearce ordered Noah to put his hands on the wall.

109.   Pearce yelled at Noah: "Stop, put your fucking hands up, you are about to get tased," and "put your hands on the fucking thing, put your hands right there right now!"

110.   Pearce then screamed at Noah, "Do not move, I swear to God I will tase you," and "If you fight I swear to God we are going to fuck you up!"

111.   Peterson later bragged to Wilcox and Graybeal that he "threw dumb dick out," referring to Noah.

112.   Noah was handcuffed and forced to sit for approximately thirty (30) minutes.

113.   Noah never threatened the officers.

114.   Noah complied with all commands.

115.   Noah was never told he was being placed under arrest, but Pearce still detained him.

116.   Following the arrival of Flores and Hollis, the officers were able to get handcuffs on David.

117.   Flores, Hollis and Graybeal, walked David out of the apartment.

118.   David complained that his heart was racing and he felt like he was going to have a heart attack. He also told Defendants that he could not breath.

119.   Wilcox commented to other Defendants at the scene that David had "retard strength."

120.   After the Attack, Graybeal can be heard saying that he and Condra

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

12

"bumrushed" David.

121. Graybeal can be heard saying "Do you remember these three?"

122. An officer stated that David had "RETARD STRENGTH".

123. Graybeal stated that he "knew there was going to be a fight", and that his last encounter with David there was "almost a fight".

124. Graybeal then referred to David as a "fuckstick".

125. He encountered Peterson at that point and told Peterson "YOU MISSED OUT!"

126. Graybeal was asked "did you squat him"?

127. He responded yes and referred to David as a "motherfucker".

128. David was arrested and charged with Resisting Arrest.

129. On January 23, 2024, a jury acquitted David on the charge of Resisting Arrest.

130. David suffered severe and life-altering injuries as a result of the Attack.

131. The extreme and repeated electrical shocks David received resulted in a diagnosis of Rhabdomyolysis ("Rhabdo"). Rhabdo is caused by the death of muscle fibers and the resultant release of those fibers into the bloodstream. According to the CDC:

> Rhabdomyolysis (often called rhabdo) is a serious medical condition that can be fatal or result in permanent disability. Rhabdo occurs when damaged muscle tissue releases its proteins and electrolytes into the blood. These substances can damage the heart and kidneys and cause permanent disability or even death.

132. Furthermore, David's Creatine Kinase ("CK") levels rose to a deadly level – multitudes higher than the normal range of 55-170.

133. David has had to make repeated visits to the hospital and doctors to monitor his condition and has had to make emergency visits because of the symptoms he has experienced.

134. David can no longer work as he is incapable of maintaining his health. It is feared that the Attack has potentially caused him to face the deadly diagnosis of Multiple Sclerosis.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

135.   Furthermore, David has hyperkalemia, hyperphosphatemia, and myoglobinuri.

136.   In addition, David suffered severe mental anguish and emotional distress both during and after the Attack.

137.   It shocks the conscience that Rebekah was a witness to the events and was so close to her brother while he was being brutally beaten by the Individual Defendants.

138.   She has been severely traumatized and has suffered severe mental anguish and emotional distress as a result, of which have caused physical manifestation of injuries including loss of appetite, insomnia, night terrors, and extreme anxiety physically in insomnia.

139.   It shocks the conscience that Noah was a witness to the events and was so close to his brother while he was being brutally beaten by the Individual Defendants.

140.   He has been severely traumatized and has suffered severe mental anguish and emotional distress as a result, of which have caused physical manifestation of injuries including loss of appetite, insomnia, night terrors, and extreme anxiety physically in insomnia.

141.   The conduct of Defendants alleged herein was outrageous and motivated by Defendants' contempt for and hatred of the Adams family.

## COUNT I

### EXCESSIVE FORCE IN VIOLATION OF DAVID'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND 42 U.S.C. § 1983

(Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

142.   Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

143.   42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Defendants, while acting in their official capacity and

14

individual capacities and under the color of law, violated David's rights to freedom from unreasonable seizures.

144.    Defendants acted willfully, knowingly, and with specific intent to deprive David of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

145.    Defendants acted unreasonably by using unnecessary and excessive force as described herein.

146.    David was not resisting arrest.

147.    David was unarmed.

148.    Despite the clear evidence that David was unarmed and not resisting arrest Defendants Graybeal, Condra and Wilcox used brutal and excessive force which was objectively unreasonable under the totality of the circumstances.

149.    The actions of Graybeal, Condra and Wilcox were intended to, and did, torment and torture David and to inflict severe personal injury.

150.    Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

151.    David's injuries were the direct result of the Defendants' (Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis) actions and inactions.

152.    Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to David and a high probability that substantial harm would result.

153.    As evidenced in the bodycam footage, and as alleged herein these Defendants approached this situation with pure evil and callousness, referring to Plaintiffs as "fucking retarded", "special needs", shouting "remember me, do you remember me" while in the middle of the Attack, that they "knew there was going to be a fight", and by after the fact exclaiming "You Missed Out! [on the Attack]".

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

154.     In causing the painful and barbaric injuries and emotional distress to David, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT II

## DUTY AND FAILURE TO INTERVENE IN VIOLATION OF DAVID'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND 42 U.S.C. § 1983

(Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

155.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

156.     "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. (citation omitted).

157.     Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

158.     As set forth herein, at no time did any of the Individual Defendants make any affirmative step to intervene to protect either David's or Noah's Constitutional rights.

159.     While David was being beaten, each of Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, or Hollis had the opportunity to intervene to stop the Attack on David.

160.     David repeatedly told them that he hadn't done anything wrong.

161.     The acts and/or omissions of Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, pray for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

162.     Plaintiffs suffered damages as a direct and proximate result of the illegal acts

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

of the Individual Defendants.

## COUNT III

## GROSS NEGLIGENCE/FAILURE TO INTERVENE

(City, Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

163.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

164.     The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

165.     "A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

166.     At all relevant times, each and every Defendant had a duty to exercise ordinary care for the safety of David.

167.     This includes taking certain actions and refraining from other actions such that the safety from harm to David was preserved.

168.     Defendants grossly breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in severe personal injury and emotional distress to David.

169.     Defendant Lake Havasu is vicariously liable under *respondeat superior* for the actions of any employee, agent, or servant of Lake Havasu and the Lake Havasu City Police Department, including that of the Individual Defendants in this case.

170.     By entering the apartment without a warrant, permission, or evidence of a crime currently being committed, Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis breached their duty – knowing that a hostile entry could lead to injury or other harm.

171.     Defendant Condra breached the standard of care by employing tactics/techniques that were known to be unreasonable and by using excessive force

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

objectively unreasonable under the totality of the circumstances.

172.    Defendant Graybeal breached the standard of care by employing tactics/techniques that were known to be unreasonable and using excessive force objectively unreasonable under the totality of the circumstances.

173.    Defendant Wilcox breached the standard of care by employing tactics/techniques that were known to be unreasonable and using excessive force objectively unreasonable under the totality of the circumstances.

174.    Peterson, Flores, Banuelos and Hollis breached the standard of care by violating their duty to intercede or intervene to prevent their fellow officers from using tactics/techniques that were unwarranted, and constituted reckless force with wanton disregard to the preservation of life.

175.    These Defendants, while acting as agents and employees for the Lake Havasu City Police Department, owed a duty to David to perform their responsibilities as officers of the law without the employment of unreasonable tactics/techniques and the use of excessive force.

176.    These Defendants, while acting as agents and employees for Lake Havasu City Police Department, owed duties to David to act objectively reasonably under the circumstances.

177.    These Defendants' use of excessive force upon David constitutes recklessness and/or negligence for which the Defendants are individually liable.

178.    These Defendants' conduct, in not using non-lethal force that was readily available, constitutes negligence and gross negligence for which the Individual Defendants are individually liable.

179.    These Defendants each had a duty to intercede to prevent the harm that befell David.

180.    In taking the actions as described above, these Defendants breached their duty to refrain from such unreasonable and indifferent conduct.

181.    None of these Defendants used peaceful tactics/techniques.

182.    None of these Defendants attempted to deescalate the situation.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

183.    There were many more reasonable paths to take, and none of them were chosen.

184.    These Defendants could have easily decided to return the next day to discuss the situation with David.

185.    They could have waited to do anything until they spoke to Plaintiffs' mother.

186.    These Defendants could have backed off and asked David to sit down.

187.    These Defendants should have never entered the domicile.

188.    These Defendants never told David he was under arrest.

189.    These Defendants failed in the simplest of duties – to serve and protect.

190.    As a direct and proximate result of these Defendants' breaches, David sustained severe and permanent injuries, suffered extreme pain and suffering, lost the ability to have and maintain meaningful familial relationships, and lost the ability to earn income.

191.    These Defendants' acts and omissions set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to David and a high probability that substantial harm would result.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS TO DAVID

(City, Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

192.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

193.    The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the plaintiff suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

194.    The Defendants engaged in extreme and outrageous conduct by physically

19

assaulting and tasing David without proper justification.

195.     Apart from Graybeal, Condra and Wilcox, the remaining Defendants had a duty to intervene.

196.     Each of the Individual Defendants could clearly see that David was unarmed, was not fighting or otherwise violent.

197.     The conduct of each of the Individual Defendants was extreme and outrageous.

198.     Each of the Individual Defendants either intended or recklessly disregarded the certainty that David would suffer emotional distress.

199.     Through their conduct, the Individual Defendants either intended or completely disregarded David's dignity and constitutional rights and knew their conduct would lead David to suffer emotional distress.

200.     This conduct led to the approximately eight (8) minute Attack, scarring David for life.

201.     As a direct and proximate result of the conduct of the Individual Defendants, David in fact suffered emotional distress.

202.     The conduct described herein was undertaken by the Individual Defendants within the scope of their employment and under color of law such that their employer, Lake Havasu, vicariously liable for their actions.

203.     Thus, the Defendants are liable for intentional infliction of emotional distress.

## COUNT V

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS TO REBEKAH

(City, Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

204.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

205.     The Defendants' negligence and intentional, willful, and wanton actions as alleged herein caused and continues to cause Rebekah severe emotional distress.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

206.    Rebekah suffered and continues to suffer severe emotional distress which has physically manifested in weight loss, nightmares, and behavioral changes, all of which were nonexistent before the Attack.

207.    Rebekah has suffered damages in an amount to be proven at trial as a result.

## COUNT VI

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS TO NOAH

(City, Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis)

208.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

209.    The Defendants' negligence and intentional, willful, and wanton actions as alleged herein caused and continues to cause Rebekah severe emotional distress.

210.    Rebekah suffered and continues to suffer severe emotional distress which has physically manifested in weight loss, nightmares, and behavioral changes, all of which were nonexistent before the Attack.

211.    Rebekah has suffered damages in an amount to be proven at trial as a result.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS TO NOAH

(City, Condra, Peterson, Pearce)

212.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

213.    The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the plaintiff suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

214.    Condra, Peterson, and Pearce engaged in extreme and outrageous conduct by physically assaulting and threatening to tase and "fuck [Noah] up".

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

215.     The conduct of each of Condra, Peterson, and Pearce was extreme and outrageous.

216.     Each of Condra, Peterson, and Pearce either intended or recklessly disregarded the certainty that Noah would suffer emotional distress.

217.     Through their conduct, the Individual Defendants either intended or completely disregarded Noah's dignity and constitutional rights and knew their conduct would lead Noah to suffer emotional distress.

218.     This conduct caused Noah to fear for his life.

219.     As a direct and proximate result of the conduct of the Individual Defendants, Noah in fact suffered emotional distress.

220.     The conduct described herein was undertaken by Condra, Peterson, and Pearce within the scope of their employment and under color of law such that their employer, Lake Havasu, vicariously liable for their actions.

221.     Thus, the Defendants are liable for intentional infliction of emotional distress.

## COUNT VIII

## BATTERY TO DAVID

(City, Graybeal, Condra, Wilcox, Peterson, Flores, Hollis)

222.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

223.     Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, and Hollis intentionally and physically threw David to the floor, piled on him, punched him repeatedly, forced his head down and forward causing him to be unable to breathe, and tased him repeatedly, which constituted harmful or offensive contact with David.

224.     David did not consent to such contact.

225.     Their conduct put David in a state of panic and fear for his life.

226.     As a direct and proximate result of their harmful or offensive contact, David sustained severe and permanent personal injuries and emotional distress.

227.   These Defendants' acts constitute a battery upon David in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

228.   The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

229.   As a direct and proximate result of these Defendants' conduct, David was deprived of his liberty, and sustained severe, painful and permanent bodily injury and emotional distress.

230.   The conduct described herein was undertaken by these Defendants within the scope of their employment and under color of law such that their employer, Lake Havasu, vicariously liable for their actions.

## COUNT IX

## BATTERY TO NOAH

(City, Condra, Peterson)

231.   Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

232.   Condra and Peterson, intentionally and physically grabbed and shoved Noah, and caused Noah's Foot to be slammed in a door, which constituted harmful or offensive contact with Noah.

233.   Noah did not consent to such contact.

234.   Their conduct put Noah in a state of panic and fear for his life.

235.   As a direct and proximate result of their harmful or offensive contact, Noah sustained severe and permanent personal injuries and emotional distress.

236.   These Defendants' acts constitute a battery upon Noah in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

237.   The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

238.   As a direct and proximate result of these Defendants' conduct, Noah was deprived of his liberty, and sustained severe and painful bodily injury and emotional

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

23

distress.

239.   The conduct described herein was undertaken by these Defendants within the scope of their employment and under color of law such that their employer, Lake Havasu, vicariously liable for their actions.

## COUNT X

### EXCESSIVE FORCE IN VIOLATION OF NOAH'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND 42 U.S.C. § 1983

(Graybeal, Condra, Wilcox, Peterson, Flores, Hollis, Banuelos, Pearce)

240.   Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

241.   Condra and Peterson, intentionally and physically grabbed and shoved Noah, and caused Noah's Foot to be slammed in a door, which constituted harmful or offensive contact with Noah.

242.   Noah did not consent to such contact.

243.   Their conduct put Noah in a state of panic and fear for his life.

244.   42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Noah's rights to freedom from unreasonable seizures.

245.   Defendants acted willfully, knowingly, and with specific intent to deprive Noah of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

246.   These Defendants acted unreasonably by using unnecessary and excessive force as described herein.

247.   Noah was not resisting arrest.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

248.   Noah was unarmed.

249.   Noah was peacefully sitting and recording a police interaction in his domicile.

250.   Despite the clear evidence that Noah was unarmed peacefully sitting and recording a police interaction in his domicile, Condra and Peterson used excessive force which was objectively unreasonable under the totality of the circumstances.

251.   The actions of Condra and Peterson were intended to, and did, torment and torture Noah and to inflict personal injury.

252.   Condra, Wilcox, Peterson, Flores, Banuelos, Hollis, and Pearce failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

253.   Instead, Pearce responded by threating to "fuck [Noah] up" and to tase him – actually aiming the taser at Noah with both the red and greenlights aimed at his chest and groin.

254.   Noah's injuries were the direct result of the Defendants' (Graybeal, Condra, Wilcox, Peterson, Flores, Banuelos, Hollis, and Pearce) actions and inactions.

255.   Additionally, the acts of these Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to David and a high probability that substantial harm would result. As a direct and proximate result of their harmful or offensive contact, Noah sustained personal injuries and emotional distress.

256.   The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

257.   As a direct and proximate result of these Defendants' conduct, Noah was deprived of his liberty, and sustained painful bodily injury and emotional distress.

## COUNT XI
### FALSE ARREST/IMPRISONMENT IN VIOLATION OF NOAH'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND 42 U.S.C. § 1983

(Graybeal, Condra, Wilcox, Peterson, Flores, Hollis, Banuelos, Pearce)

258.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

259.    These Defendants – acting under the color of law – falsely arrested/imprisoned Noah in violation of his Fourth and Fourteenth Amendment rights.

260.    With no provocation from Noah, with no probable cause, with no warrant, with no crime being committed, these Defendants took custody of Noah and handcuffed him while surrounding him for approximately thirty (30) minutes.

261.    Noah was peacefully sitting and exercising his right to record the Attack in his own domicile.

262.    Suddenly, these Defendants decided to detain Noah for absolutely no reason.

263.    Additionally, the acts of these Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to David and a high probability that substantial harm would result. As a direct and proximate result of their harmful or offensive contact, Noah sustained personal injuries and emotional distress.

264.    The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

265.    As a direct and proximate result of these Defendants' conduct, Noah was deprived of his liberty, and sustained painful bodily injury and emotional distress.

### JURY TRIAL DEMAND

266.    Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

a)  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)  For all other non-pecuniary damages as to be proven at trial;

c)  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)  For pre-and post judgment interest to the extent provided by law;

e)  For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)  For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 7th day of June 2024.

**MILLS + WOODS LAW, PLLC**

By____*/s/ Sean A. Woods*_____
**Error! Reference source not found.**
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

**ORIGINAL** filed this 7th day of June 2024
via ECF with the District of Arizona.

_____*/s/ Ben Dangerfield*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556